IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ENVIROGLAS PRODUCTS, INC.; AMERICAN TERRAZZO COMPANY, LTD.; DARIN FLABIANO; BRANDON FLABIANO; BRENTON FLABIANO; WILTON FLABIANO, | § § § § § § | Civil Action No. 3:09-cv-00265-G |
| Plaintiffs, | § § | |
| v. | § | **Jury Trial Demanded** |
| ENVIROGLAS, LLC; TIMOTHY WHALEY, | § § | |
| Defendants. | § § | |

## PLAINTIFFS' FIRST AMENDED COMPLAINT
## FOR MONETARY, INJUNCTIVE, AND DECLARATORY RELIEF
### (Jury Trial Demanded)

Plaintiffs EnviroGLAS Products, Inc. ("EnviroGLAS"), Darin Flabiano, Brandon Flabiano, Brenton Flabiano, Wilton Flabiano, and American Terrazzo Company, Ltd. ("ATC"), by and through their attorneys, and for their complaint against Defendants EnviroGLAS, LLC ("EGL") and Timothy Whaley, allege as follows:

## I.
## INTRODUCTION

1.     This case centers on the reprehensible conduct of EnviroGLAS's former president, Defendant Timothy Whaley. Whaley stole virtually all of EnviroGLAS's assets and converted them for the use of his newly-created competing venture, Defendant EGL, that he started *while he was still an officer, director, and 50% shareholder of EnviroGLAS*. Defendant Whaley egregiously breached his fiduciary duties in unlawfully appropriating EnviroGLAS's assets and, after he resigned, he stole EnviroGLAS's money *directly from its bank accounts*. He

also continued to contact EnviroGLAS's customers and vendors after he resigned, and led them to believe that they were still dealing with EnviroGLAS. Plaintiffs are entitled to recover both actual and exemplary damages as a result of Whaley's flagrant misconduct.

## II.
## THE PARTIES

2.      Plaintiff EnviroGLAS is a Texas corporation with its principal office at 309 Gold Street, Garland, Texas 75042. EnviroGLAS is a closely-held corporation within the meaning of the Texas Business Corporation Act article 5.14(L).

3.      ATC is a Texas Limited Partnership with its principal office at 309 Gold Street, Garland, Texas 75042.

4.      Plaintiffs Darin Flabiano, Brandon Flabiano, Brenton Flabiano, and Wilton Flabiano (collectively, the "Flabianos") are Texas residents and collectively represent all of the shareholders in Plaintiff EnviroGLAS with the exception of Defendant Whaley.

5.      Defendant EnviroGLAS, LLC is a Texas member-managed limited liability company with a principal office at 7704 San Jacinto Place, #200, Plano, Texas 75024. EGL may be served by serving its sole member and registered agent, Timothy Whaley, at 7704 San Jacinto Place, #200, Plano, Texas 75024.

6.      Defendant Timothy Whaley is an individual residing in the State of Texas. Mr. Whaley may be served with process at 7704 San Jacinto Place, #200, Plano, Texas 75024 or at such other place within the State of Texas as he may be found.

## III.
## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States. In addition, this Court has subject matter jurisdiction

pursuant to 28 U.S.C. § 1338(a).  This Court has supplemental jurisdiction over the state-law

claims pursuant to 28 U.S.C. § 1367.

8.      Defendants are Texas residents, and this Court has both specific and general

jurisdiction over Defendants, as Defendants have transacted business within the State of Texas

and the events giving rise to this litigation occurred from Defendants' transaction of business

within the state.  Moreover, Defendants maintain continuous and systematic contacts within the

State of Texas.

9.      Venue is proper in this Judicial District under 28 U.S.C. § 1391 because one or

more Defendants reside in this district and because all or a substantial part of the events giving

rise to this action occurred within this District and Division.

## IV.
## FACTUAL BACKGROUND

10.     Whaley's fraud on Plaintiffs began in 2002, when he entered into discussions in

Dallas County with two of ATC's principals, Mattia Flabiano, Jr., and Plaintiff Brenton

Flabiano, regarding a partnership to create and manufacture a new terrazzo-type surface using

crushed glass that would otherwise be bound for local landfills.  The flooring would be both

aesthetically pleasing and environmentally friendly.

11.     Following Mattia Flabiano's passing, ATC's owners, the Flabianos, together with

Defendant Whaley, entered into discussions regarding the new surface.  The parties formed a

partnership for the purpose of manufacturing and promoting the new surface.  Initially, the

parties began marketing the surface as "EnviroGLAS" under the American Terrazzo name and

image.  The parties were essentially partners in the new venture.  Whaley took the principal role

in marketing and promoting the product.  ATC and the Flabianos acted as financial backers of

the product, and allowed the ATC name and brand to become associated with the product.  In addition, ATC used its resources and know-how to manufacture the product.

12.     In 2003, the Flabianos and Whaley consummated their partnership by forming EnviroGLAS.  EnviroGLAS's purpose would be to create and market the new surface.

13.     EnviroGLAS was registered with the Texas Secretary of State on July 9, 2003.

14.     The majority of the discussions regarding the formation of EnviroGLAS occurred at American Terrazzo's offices in Garland, Texas, or by Whaley's telephone calls with ATC's offices in Garland, Texas.  Whaley traveled to ATC's offices on a number of occasions during the parties' negotiations and during their co-ownership of EnviroGLAS.  In fact, Whaley's primary office was located in ATC's offices in Garland during his time with EnviroGLAS.

15.     The parties agreed that Whaley would serve as the president of EnviroGLAS, and would work for EnviroGLAS full time.  The Flabianos vested Whaley with almost total control of EnviroGLAS's day-to-day activities.

16.     In reliance on Whaley's representations that he would be dedicated to EnviroGLAS and would work for its benefit, ATC and the Flabianos infused almost $1 million into the company, purchasing, among other things, domain names for a website (the "EnviroGLAS Domain Names"), telephone numbers, and office equipment, as well as paying salaries and various legal fees.

17.     As with most new ventures, EnviroGLAS took some time to catch on.  During EnviroGLAS's infancy, ATC continued to infuse cash into the company because it believed in the product, and was convinced that its investment would pay off over the long term.

18.     Whaley had other plans, however.  Unbeknownst to Plaintiffs, Whaley was, from the very beginning, plotting to wrest the venture away from them and to deprive them of the value of their investments.  His plan was to allow ATC and the Flabianos to fund EnviroGLAS

in its fledgling years.  During that time, he would become the "face" of the EnviroGLAS

business on the commercial side.  Then, once the market was developed and the business was

capable of supporting itself, Whaley intended to start his own competing business—using the

EnviroGLAS name, no less—to which he would take EnviroGLAS's customers, its inventory,

and, incredibly, even its office equipment.  To accomplish his purposes, Whaley would engage in

self-dealing, diverting corporate assets, and usurping corporate opportunities.

19.     As ATC and the Flabianos anticipated, over time EnviroGLAS's business grew,

as consumers began to seek cost-effective, stylish, and environmentally-friendly flooring and

countertop alternatives.

20.     EnviroGLAS was poised to capitalize on the emerging demand for the

EnviroGLAS product when Whaley began to implement his plans to steal the business away.

21.     First, he submitted a patent application for the flooring (the "EnviroGLAS

Patent") and trademark application (the "EnviroGLAS Trademark") in his own name, even

though he knew that EnviroGLAS and/or ATC was the true owner of this intellectual property.

In fact, he used *EnviroGLAS funds* (by submitting receipts for reimbursement to ATC's offices)

to pay legal fees related to these applications, and used EnviroGLAS's funds to hire a "trademark

protection agency" to prevent infringement.  Whaley, of course, hid the fact that he was hoarding

EnviroGLAS's intellectual property by placing them in his name.  A true and correct copy of the

EnviroGLAS Patent (U.S. Patent Number 6,770,328) is attached at **Exhibit A**, and true and

correct copies of the EnviroGLAS Trademark are attached as **Exhibit B**.

22.     In furtherance of Whaley's nefarious plan, he created Defendant "EnviroGLAS,

LLC"—a limited liability company trading on the EnviroGLAS name.  On January 10, 2007—

while he was still an officer and director of EnviroGLAS—Whaley filed a certificate of

formation for "EnviroGLAS, LLC."

23.     Plaintiffs were not aware of Whaley's conduct in forming this new entity, nor did Whaley disclose this conduct to Plaintiffs.

24.     On April 30, 2007, Whaley, on behalf of EnviroGLAS, LLC, executed the document attached as **Exhibit C.**

25.     The document attached as **Exhibit C** reflects a third party's contract proposal to EnviroGLAS Products, Inc.

26.     On the document attached as **Exhibit C**, Whaley struck through EnviroGLAS Products, Inc.'s name and inserted the name of EnviroGLAS, LLC.  Whaley executed the document as the "President/Owner" of EnviroGLAS, LLC.

27.     Because Whaley was the president (and primary employee) of EnviroGLAS, he was entrusted with the responsibility of setting up the company's website, EnviroGLAS's Domain Names, EnviroGLAS's toll-free telephone lines (the "Toll-Free Numbers"), EnviroGLAS's email accounts (the "Email Accounts"), and the like.  He set these up in his own name—rather than in the name of EnviroGLAS—although he used EnviroGLAS's funds to pay for them.  Later, when he resigned from EnviroGLAS, he refused to give EnviroGLAS access to any of these things—instead, he used them to give his new venture a leg up (even though neither Whaley nor EGL had any rights in them).

28.     On May 7, 2007, Whaley tendered his resignation as president of EnviroGLAS.

29.     Despite having tendered his resignation, Whaley nevertheless remained as a director and shareholder of the company.

30.     Even before he resigned as an officer of EnviroGLAS, Whaley began his efforts to pull customers away from EnviroGLAS to his new company (on which he bestowed a confusingly similar name).  In addition, both before and after his departure, Whaley interfered with EnviroGLAS's relationships with its customers and suppliers by leading EnviroGLAS's

existing customers and suppliers to believe that they were dealing with him in his capacity with EnviroGLAS—in other words, he continued to deal with EnviroGLAS's customers and suppliers, who didn't recognize any difference.

31.     Not satisfied with his flagrant breaches of fiduciary duties and with stealing EnviroGLAS's customers and intellectual property rights, Whaley openly and unabashedly stole EnviroGLAS's money, equipment, and rents, and used all of these things to jumpstart Defendant EGL, providing it with start-up capital and pre-paid equipment and facilities.

32.     Incredibly, Whaley—*after resigning from EnviroGLAS*—knowingly and willfully accessed EnviroGLAS's bank accounts to withdraw money and to transfer funds from those accounts into his own accounts.  Whaley did this even though EnviroGLAS had expressly informed him that he was no longer permitted to access EnviroGLAS's accounts.

33.     Whaley also used EnviroGLAS's funds to pay the deposit and two months' rent on the office space for his new venture.  In addition, Whaley knowingly charged shipments for his new venture to EnviroGLAS's FedEx account.

34.     Whaley also converted the office equipment—including computers, desks, and other supplies—for which EnviroGLAS had paid (via ATC's payment processing).  When he left EnviroGLAS, he ran his competing venture out of the same office paid for by EnviroGLAS and which EnviroGLAS had intended to use.

35.     Whaley refused to return all of the computers, furniture, printers, and other office equipment for which EnviroGLAS had unquestionably paid (again, Whaley submitted receipts to ATC's offices and was reimbursed for any of his own expenditures for this equipment).

36.     Whaley did not even bother to fabricate an excuse for his misdeeds—he simply shamelessly stole EnviroGLAS's personal property and money to use in the operation of EGL.

37.     Not only did he illegally convert this property for his own use, but he used this property to compete *against* EnviroGLAS, the very company that owned them.

38.     Whaley even went so far as to attend a trade show on behalf of his new company *even though EnviroGLAS had paid the deposit for the show*.

39.      Whaley then, upon information and belief, contacted EnviroGLAS's sales representatives in an effort to persuade them to sever their ties with EnviroGLAS and team up with him.

40.     After resigning from his position at EnviroGLAS, Whaley continued to access EnviroGLAS's email accounts without authorization.  In addition, he used the domain names registered with EnviroGLAS funds, and a website created at EnviroGLAS's expense, on behalf of Defendant EGL, his new company.  Whaley has flooded the internet with the EnviroGLAS name and has used EnviroGLAS's Trademark, website, email addresses, domain names, and patent to further the interests of Defendant EGL.  He has repeatedly misrepresented EnviroGLAS as related to his venture, and has confused the market by trading on EnviroGLAS's established name and trademarks.

41.     On information and belief, including information obtained from the EnviroGLAS Website now operated by Defendants, Whaley and EnviroGLAS Products, LLC have used the EnviroGLAS Trademark in Dallas County and have dealt with customers in Dallas County. Indeed, the EnviroGLAS Website includes a "testimonial" from a resident of this district.

42.     Often, customers and suppliers dealing with Whaley after Whaley's resignation believed that they were dealing with EnviroGLAS, and were unaware of any distinction between EnviroGLAS Products, Inc. (the Plaintiff) and Whaley's new venture (EnviroGLAS, LLC). **Exhibits D and E** are true and correct copies of correspondence received by EnviroGLAS

related to confusion created by Defendants.  There are undoubtedly many additional instances of which EnviroGLAS is not yet aware.

43.     In addition, Whaley contacted EnviroGLAS's website hosting service (related to a website different from the one that Whaley improperly continued to control after he resigned from EnviroGLAS) and demanded that the site be taken down (claiming that it infringed on his trademark).  As a result of Whaley's improper conduct, EnviroGLAS's website host temporarily removed EnviroGLAS's website from the internet.

44.     Until Whaley resigned from EnviroGLAS, Plaintiffs were prevented from reasonably discovering Whaley's prior misconduct as a result of his continuing fraud.  Once he resigned his position and began soliciting clients for his competing venture, his misconduct came to light.

45.     On or about March 26, 2009, Whaley and/or EGL's attorney sent a letter to American Terrazzo, accusing American Terrazzo (presumably referring to EnviroGLAS Products, Inc.) of infringing the EnviroGLAS Patent and the EnviroGLAS Trademark.  A true and correct copy of the letter is attached as **Exhibit F**.

46.     At about the same time, Whaley and/or EGL's attorney sent letters to EnviroGLAS customers and other terrazzo industry participants (including at least one in Dallas County) in which Whaley accused American Terrazzo (presumably referring to EnviroGLAS Products, Inc.) of infringing the EnviroGLAS Patent and the EnviroGLAS Trademark.  A true and correct copy of one such letter is attached as **Exhibit G**.

47.     These letters were sent in bad faith or as the result of a failure on the part of Whaley and/or his agents to conduct due diligence.

## V.
## CLAIMS FOR RELIEF

### CLAIM ONE
### (Breach of Fiduciary Duty – Whaley)

48.     Plaintiffs repeat and re-allege all of the allegations in the paragraphs above as well as in the other counts of this complaint, as if set forth fully herein.

49.     Whaley, as an officer, director, and fifty-percent shareholder of EnviroGLAS, owed fiduciary duties to the company and to the Flabianos, as the remaining shareholders of a closely-held corporation.

50.     In addition, even before EnviroGLAS was formed, Whaley and the Flabianos partnered together to work on the concept.  Moreover, once EnviroGLAS was formed, the Flabianos entrusted Whaley with the role of running the corporation.  They allowed Whaley to become the "face" of EnviroGLAS to clients, suppliers, and others.  Whaley knew that the Flabianos reposed a great deal of trust in him for these purposes, and he actively encouraged such trust.

51.     Whaley breached his fiduciary duties, including his duties of loyalty, fair dealing, integrity, and full disclosure, as well as his duty to refrain from self-dealing, through his self-dealing and his disloyal and surreptitious conduct described above.

52.     Whaley's breaches of fiduciary duties proximately caused damages to EnviroGLAS and the Flabianos, for which they are entitled to recover.  EnviroGLAS has suffered lost profits and additional expenses as a result of Whaley's breaches.  The Flabianos and ATC have suffered pecuniary damages through their investments in EnviroGLAS.  In addition, Whaley profited and earned significant fees through his breaches of fiduciary duties, and EnviroGLAS is entitled to recover any profits to Whaley under the equitable theory of disgorgement.

53.     Whaley's breaches of his fiduciary duty have been willful, committed with gross negligence, or otherwise qualify for the imposition of exemplary damages.  Plaintiffs seek exemplary damages as a result of Whaley's breaches of fiduciary duties.

## CLAIM TWO
### (Fraud by Non-Disclosure – Whaley)

54.     Plaintiffs repeat and re-allege all of the allegations in the paragraphs above as well as in the other counts of this complaint, as if set forth fully herein.

55.     Throughout his dealings with ATC, the Flabianos, and EnviroGLAS until the time he resigned from EnviroGLAS, Whaley concealed his true intentions from Plaintiffs, as well as his illicit conduct in forming his competing venture.

56.     Whaley had a duty to disclose his conduct and intentions due to his fiduciary relationship with Plaintiffs as well as his partial disclosures conveying a false impression to plaintiffs at the outset of their venture (specifically, the impression that Whaley intended to partner with the Flabianos and ATC and that his conduct would further the interests of EnviroGLAS).

57.     Whaley's true intentions and the true nature of his conduct were material—had Plaintiffs known that Whaley was preparing to steal all of the assets that EnviroGLAS accumulated (including its customers), Plaintiffs would have dealt differently with Whaley and would not have infused substantial amounts of money in EnviroGLAS.  In addition, Plaintiffs would not have expended EnviroGLAS's limited funds on assets that Whaley placed in his own name and that Whaley was planning to convert for his own use.

58.     Whaley knew that Plaintiffs were ignorant of the undisclosed facts and conduct— indeed, he made every effort to conceal these things from them.  Because of this, Plaintiffs did not have an equal opportunity to discover these facts.

59.     Despite Whaley's duty of full disclosure of information relevant to his conduct and his plans regarding his competing venture, Whaley deliberately remained silent.

60.     Whaley intended to induce Plaintiffs to partner with him in creating EnviroGLAS, to fund EnviroGLAS, and to continue funding various activities and acquisitions which Plaintiffs believed to be for the benefit and use of EnviroGLAS.

61.     Plaintiffs in fact took the actions that Whaley intended as a result of their reliance on the facts as they believed them to be (that is, because of Whaley's non-disclosure).

62.     As a proximate result of Whaley's conduct and non-disclosures, Plaintiffs suffered damages in an amount to be proven at trial, for which Plaintiffs are entitled to recover.

63.     Plaintiffs are also entitled to recover exemplary damages as a result of Whaley's fraudulent conduct.

## CLAIM THREE
### (Conversion – Defendants)

64.     Plaintiffs repeat and re-allege all of the allegations in the paragraphs above as well as in the other counts of this complaint, as if set forth fully herein.

65.     EnviroGLAS owned, possessed, and/or had the immediate right to possession of certain personal property, including raw materials used to fabricate the EnviroGLAS flooring, the office space and leased premises (and accompanying lease agreements), the office equipment and furniture, the EnviroGLAS Patent, the EnviroGLAS Trademark, the Domain Names (and accompanying lease agreements), and the web sites (and accompanying lease agreements).

66.     Defendants have wrongfully exercised dominion or control over the above-described property—they have treated the property as their own and have interfered with EnviroGLAS's possessory rights.

67.     Defendants' wrongful conduct has proximately injured EnviroGLAS, and EnviroGLAS is entitled to recover damages in an amount to be proven at trial.

68.     In addition, Plaintiffs are entitled to recover exemplary damages as a result of Defendants' conversion of Plaintiffs' property.

## <u>CLAIM FOUR</u>

### (Tortious Interference with Existing Relations - Defendants)

69.     Plaintiffs repeat and re-allege all of the allegations in the paragraphs above as well as in the other counts of this complaint, as if set forth fully herein.

70.     EnviroGLAS had a number of valid contracts and agreements with its customers, suppliers, and representatives, as well as ongoing business relationships with these parties, at the time Whaley resigned and began his competing venture.

71.     Whaley and EGL were aware of these agreements and relationships—indeed, Whaley had fostered many of these relationships in his role as EnviroGLAS's president.

72.     Despite their awareness of the established relationships and contracts that EnviroGLAS had with its customers, suppliers, and representatives, Defendants intentionally interfered by inducing parties to breach their contracts with EnviroGLAS and to enter into contracts with EGL.  Defendants accomplished his misfeasance by, among other things, using contact information and customer lists that Whaley had acquired as a result of his position at EnviroGLAS.

73.     In addition, Whaley interfered with EnviroGLAS's contractual relationships by threatening EnviroGLAS's web host regarding alleged infringement of the EnviroGLAS Trademark.

74.     Moreover, Defendants have interfered with EnviroGLAS's contractual relationships by sending a threatening letter accusing Plaintiffs of infringing the EnviroGLAS Patent and the EnviroGLAS Trademark.

75.     As a proximate result of Defendants' malicious conduct, EnviroGLAS has suffered significant damages for which EnviroGLAS is entitled to recover in an amount to be proven at trial.

76.     In addition, EnviroGLAS is entitled to recover exemplary damages as a result of Defendants' tortious interference.

## CLAIM FIVE

### (Tortious Interference with Prospective Relations – Defendants)

77.     Plaintiffs repeat and re-allege all of the allegations in the paragraphs above as well as in the other counts of this complaint, as if set forth fully herein.

78.     In addition to interfering with EnviroGLAS's relationships with its existing customers and suppliers, Defendants also interfered with prospective customers and suppliers. EnviroGLAS had numerous prospective clients when Whaley began EGL.  There was a reasonable probability that, but for Whaley's and EGL's misconduct, EnviroGLAS would have entered into a business relationship with these prospective customers.

79.     Defendants intentionally and maliciously interfered with EnviroGLAS's prospective relationships.

80.     As set forth above, Defendants illicitly contacted EnviroGLAS's prospective customers and suppliers (using information he obtained as a result of his position with EnviroGLAS), and interfered with EnviroGLAS's prospective relationships.

81.     Moreover, Defendants have interfered with EnviroGLAS's prospective relationships by sending a threatening letter accusing Plaintiffs of infringing the EnviroGLAS

Patent and the EnviroGLAS Trademark.  This letter was sent in bad faith and without a reasonable basis.

82.     Defendants' interference was independently tortious or unlawful—among other things, it constituted a breach of fiduciary duties, a violation of the Federal Computer Fraud and Abuse Act, and was defamatory.

83.     As a proximate result of Defendants' malicious conduct, EnviroGLAS has suffered significant damages for which EnviroGLAS is entitled to recover in an amount to be proven at trial.

84.     In addition, EnviroGLAS is entitled to recover exemplary damages as a result of Defendants' tortious interference.

<u>**CLAIM SIX**</u>
**(Theft Liability Act – Defendants)**

85.     Plaintiffs repeat and re-allege all of the allegations in the paragraphs above as well as in the other counts of this complaint, as if set forth fully herein.

86.     EnviroGLAS had a possessory right to the personal property described above, including raw materials used to fabricate the EnviroGLAS flooring, the office space and leased premises (and accompanying agreements), the office equipment and furniture, the EnviroGLAS Trademark, and the EnviroGLAS Patent.

87.     Defendants unlawfully appropriated this property without EnviroGLAS's consent, and Defendants' unlawful appropriation was meant to deprive EnviroGLAS of the property for their own benefit.

88.     By their actions, Defendants committed a felony in violation of Chapter 31 of the Texas Penal Code, made actionable in a civil claim under the Theft Liability Act.

89.     As a result of Defendants' theft, EnviroGLAS has sustained damages for which it is entitled to recover in an amount to be proven at trial.

90.     In addition, EnviroGLAS is entitled to recover exemplary damages as a result of Defendants' theft.

## CLAIM SEVEN

### (Computer Fraud and Abuse Act – Defendants)

91.     Plaintiffs repeat and re-allege all of the allegations in the paragraphs above as well as in the other counts of this complaint, as if set forth fully herein.

92.     Whaley, on behalf of EGL, intentionally accessed EnviroGLAS's computers and servers, as well as those hosting EnviroGLAS's email and domains.  Whaley was not authorized to access these computers and servers, and exceeded his authorization in accessing such computers and servers.  Whaley knew that he was not authorized to access these and that, by accessing them, he was exceeding his authorization.

93.     The computers and servers constituted "protected computers" within the meaning of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*

94.     Whaley obtained valuable information from these computers and servers, and did so knowingly and with the intent to defraud EnviroGLAS (and, in fact, continues to do so).  The value of the information and data Whaley obtained by his unauthorized access in a one-year period exceeded $5000.

95.     As a proximate result of Whaley's unauthorized access, EnviroGLAS has suffered damages in an amount to be proven at trial.

## CLAIM EIGHT

### (Misappropriation of Trade Secrets – Defendants)

96.     Plaintiffs repeat and re-allege all of the allegations in the paragraphs above as well as in the other counts of this complaint, as if set forth fully herein.

97.     At all material times, EnviroGLAS's customer lists, pricing data, product designs, marketing data, and supplier and vendor lists were proprietary information used in EnviroGLAS's business, had independent economic value, and gave EnviroGLAS a competitive advantage.  EnviroGLAS maintained its proprietary information in confidentiality.

98.     Whaley acquired knowledge of EnviroGLAS's proprietary information in the course of his employment at EnviroGLAS.  Whaley knew that this information was confidential and gave EnviroGLAS a competitive advantage.

99.     In forming and operating his competing venture, Whaley, on behalf of EGL, used EnviroGLAS's trade secrets to give his own competing venture a competitive advantage.

100.    Defendants' misappropriation of EnviroGLAS's trade secrets proximately caused damage to EnviroGLAS, and benefited Defendants.  EnviroGLAS is entitled to recover damages for Defendants' misappropriation in an amount to be proven at trial.

101.    In addition, EnviroGLAS is entitled to recover exemplary damages from Defendants as a result of their misappropriation of its trade secrets.

## CLAIM NINE

### (False or Fraudulent Representation to USPTO – Whaley)

102.    Plaintiffs repeat and re-allege all of the allegations in the paragraphs above as well as in the other counts of this complaint, as if set forth fully herein.

103.    Whaley procured the EnviroGLAS Trademark in his own name by making a false or fraudulent representation to the United States Patent and Trademark Office.

104.    Specifically, Whaley swore that, to the best of his knowledge and belief, no other person had the right to use the EnviroGLAS Trademark in commerce either in the identical form or in such near resemblance thereto as to be likely to cause confusion, or to cause mistake, or to deceive.  A true and correct copy of Whaley's application for the EnviroGLAS Trademark is attached as **Exhibit H**.

105.    In reality, Whaley knew that the EnviroGLAS Trademark belonged to EnviroGLAS and not to him individually.  He knew that EnviroGLAS was using the mark in commerce, and that it had superior rights in the mark.  In fact, Whaley later signed *on behalf of EnviroGLAS* a license granting another entity permission to use the EnviroGLAS Trademark.  A true and correct copy of this document is attached as **Exhibit I**.

106.    Whaley knew that his own use of the mark would be confusing and deceptive given EnviroGLAS's superior rights, and he had no reason to believe otherwise.

107.    Whaley intended by his false and fraudulent statements to the Patent and Trademark Office to procure a registration to which he was not entitled.

108.    As a direct and proximate result of Whaley's improper procurement of the EnviroGLAS Trademark through his false or fraudulent representation, EnviroGLAS has been damaged in an amount to be proven at trial.

## CLAIM TEN
### (Declaratory Judgment)

109.    Plaintiffs repeat and re-allege all of the allegations in the paragraphs above as well as in the other counts of this complaint, as if set forth fully herein.

110.    An actual controversy exists between the parties within the meaning of 28 U.S.C. § 2201.  This Court is vested with the power to declare the rights, status, and other legal relations of the parties to this action with reference to the issues raised by this Complaint.

111.    EnviroGLAS requests that the Court declare that:

(a)  EnviroGLAS is the owner of the EnviroGLAS Trademark and the EnviroGLAS Patent, or, in the alternative, that these assets are held in a constructive trust benefiting EnviroGLAS;

(b)  The records of the United States Patent and Trademark Office be reformed pursuant to 15 U.S.C. § 1119 to show EnviroGLAS as the owner of the EnviroGLAS Trademark.

(c)  That the records of the United States Patent and Trademark Office be reformed to reflect EnviroGLAS's ownership of and rights in the EnviroGLAS Patent.

(d)  EnviroGLAS has a possessory and ownership interest in the Domain Names, Email Accounts, and Toll-Free Numbers superior to any such right that Defendants claim; and

(e)  EnviroGLAS owns all of the office equipment and furniture at issue in this suit.

## CLAIM ELEVEN
### (Declaratory Judgment – EnviroGLAS Patent)

112.    Plaintiffs repeat and re-allege all of the allegations in the paragraphs above as well as in the other counts of this complaint, as if set forth fully herein.

113.    An actual controversy exists between the parties within the meaning of 28 U.S.C. § 2201, as demonstrated in part by the threatening letters sent by Defendants or their representatives.  This Court is vested with the power to declare the rights, status, and other legal relations of the parties to this action with reference to the issues raised by this Complaint.

114.    Plaintiffs do not infringe the EnviroGLAS Patent (even if the EnviroGLAS Patent belonged to Defendants).

115.    Moreover, even if Plaintiffs would otherwise infringe the EnviroGLAS Patent, Whaley's and/or EnviroGLAS, LLC's above-described conduct bars them from asserting any claims based on Plaintiffs' alleged infringement because of principles of estoppel, waiver, laches, implied license, and/or unclean hands.

116.    Plaintiffs seek a judgment declaring that they do not infringe the EnviroGLAS Patent and/or that Defendants are barred and estopped from asserting any such claims against EnviroGLAS or its customers and suppliers, and that Plaintiffs hold a perpetual and exclusive license under the EnviroGLAS Patent.

## CLAIM TWELVE
### (Declaratory Judgment – EnviroGLAS Trademark)

117.    Plaintiffs repeat and re-allege all of the allegations in the paragraphs above as well as in the other counts of this complaint, as if set forth fully herein.

118.    An actual controversy exists between the parties within the meaning of 28 U.S.C. § 2201, as demonstrated in part by the threatening letters sent by Defendants or their representative.  This Court is vested with the power to declare the rights, status, and other legal relations of the parties to this action with reference to the issues raised by this Complaint.

119.    Even if Defendants hold any rights in the EnviroGLAS Trademark, their above-described conduct bars them from asserting any claims based on Plaintiffs' alleged infringement because of principles of estoppel, waiver, laches, implied license, and/or unclean hands.

120.    Plaintiffs seek a judgment declaring that Defendants are barred and estopped from asserting any such claims against EnviroGLAS or its customers and suppliers, and that Plaintiffs hold a perpetual and exclusive license under the EnviroGLAS Trademark.

## CLAIM THIRTEEN

### (Unfair Competition/Misappropriation – Defendants)

121.    Plaintiffs repeat and re-allege all of the allegations in the paragraphs above as well as in the other counts of this complaint, as if set forth fully herein.

122.    EnviroGLAS developed and marketed the EnviroGLAS name and trademarks through the investment of extensive time, skill, efforts and funds.  Defendants have used the EnviroGLAS name and trademarks in competition with EnviroGLAS to gain a special advantage.

123.    Defendants gained a particular advantage because they were not saddled with the expense incurred by EnviroGLAS in developing the EnviroGLAS name and trademarks and in fostering the public recognition and reputation of the name and marks.

124.    By these actions, Defendants have gained a financial benefit for themselves and have damaged EnviroGLAS.

125.    Such actions by Defendants have caused and will continue to cause EnviroGLAS commercial damage in an amount to be proven at trial, as well as irreparable injury for which it has no adequate remedy at law.

## CLAIM FOURTEEN

### (Injury to Business Reputation (State Law) – Defendants)

126.    Plaintiffs repeat and re-allege all of the allegations in the paragraphs above as well as in the other counts of this complaint, as if set forth fully herein.

127.    Defendants' use of the EnviroGLAS Trademark has injured and is likely to continue to injure EnviroGLAS's business reputation and to dilute the distinctive quality of the EnviroGLAS Trademark and the products associated with the EnviroGLAS Trademark, as well as the EnviroGLAS trade name, in violation of Texas Business and Commerce Code § 16.29.

128.    By these actions, Defendants have gained financial benefit for themselves and have caused damages to EnviroGLAS.

129.    Defendants have caused and will continue to cause EnviroGLAS irreparable injury for which Plaintiffs have no adequate remedy at law.

## CLAIM FIFTEEN
### (Lanham Act Violations – Defendants)

130.    Plaintiffs repeat and re-allege all of the allegations in the paragraphs above as well as in the other counts of this complaint, as if set forth fully herein.

131.    Defendants have, in connection with their goods and/or services, used in commerce a word, term, name, symbol, or device, or combination thereof (including the name "EnviroGLAS" and the domain name enviroglasproducts.com), or a false designation of origin, false or misleading description of fact, or false or misleading representation of fact which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with EnviroGLAS, EnviroGLAS's products and services, and/or the EnviroGLAS Trademark, or as to the origin, sponsorship, or approval of Defendants' goods or services by EnviroGLAS in violation of 15 U.S.C. § 1125(a)(1)(a).

132.    Defendants have marketed their infringing goods or services in this District and have sold the infringing goods or services (under the infringing marks) in this District and to residents of this District.

133.    EnviroGLAS has suffered and will continue to suffer extensive damages to its business, reputation, and goodwill, and Defendants have made an unlawful profit as a result of their willful and bad-faith infringement.

134.    Defendants' conduct renders this an "exceptional" case under 15 U.S.C. § 1117(a).

## CLAIM SIXTEEN

### (Quantum Meruit – Whaley)

135.     Plaintiffs repeat and re-allege all of the allegations in the paragraphs above as well as in the other counts of this complaint, as if set forth fully herein.

136.     In the alternative to the above, Plaintiffs have provided substantial sums of money, office furniture, and equipment to Whaley which Whaley accepted.

137.     Whaley had reasonable notice that Plaintiffs expected compensation in return for Plaintiffs' expenditures.

138.     Thus, as an alternative to the above-described theories, Plaintiffs are entitled to recover as quantum meruit all sums expended for goods and services which Whaley used for the benefit of himself of his competing venture, together with prejudgment and postjudgment interest.

## CLAIM SEVENTEEN

### (Anti-Cybersquatting Consumer Protection Act – Defendants)

139.     Plaintiffs repeat and re-allege all of the allegations in the paragraphs above as well as in the other counts of this complaint, as if set forth fully herein.

140.     EnviroGLAS holds a distinct trademark.

141.     Defendants have registered, trafficked in, and/or used the EnviroGLAS Domain Names (including enviroglasproducts.com) with a bad faith intent to profit from EnviroGLAS's trademark rights in violation of 15 U.S.C. § 1125(d).

142.     The EnviroGLAS Domain Names are confusingly similar or identical to the EnviroGLAS Trademark, as Defendants are well aware.

143.     By registering, trafficking in, and/or using the EnviroGLAS Domain Names, Defendants are intent on trading off of EnviroGLAS's reputation and its Trademark.

144.     Defendants' bad faith intent to profit from the EnviroGLAS Trademark is demonstrated by, among other things, the following:

(a) Defendants have no legitimate trademark rights in the EnviroGLAS name or the EnviroGLAS Domain Names;

(b) EnviroGLAS—not Defendants—is the only party to have a bona fide commercial use in the EnviroGLAS Domain Names;

(c) Whaley's flagrant and unremorseful breaches of his fiduciary duties;

(d) Defendant EGL does not have "products" in its name, but uses the domain enviroglasproducts.com (the domain registered and paid for by EnviroGLAS);

(e) Defendants know that EnviroGLAS registered and renewed the EnviroGLAS Domain Names;

(f) Defendants knew, even as they used the EnviroGLAS Domain Names, that they were using domain names that had been registered and paid for by EnviroGLAS.   (Moreover, Defendants began using the EnviroGLAS Domain Names before the term had even expired on EnviroGLAS's registration.);

(g) Defendants intend to divert and, upon information and belief, have diverted consumers from engaging in business with EnviroGLAS by maintaining their confusing and misleading domain name, resulting in confusion and likely harm to the goodwill represented by the EnviroGLAS Trademark;

(h) Upon information and belief, Whaley provided material and misleading information when registering the EnviroGLAS Domain Names; and

(i) Defendants had no reason to believe that their use of the EnviroGLAS Domain Names could constitute fair use or was otherwise lawful.

145.    Pursuant to 15 U.S.C. § 1125(d)(1)©, the Court should order the transfer of the registration each of the EnviroGLAS Domain Names to EnviroGLAS.

146.    Pursuant to 15 U.S.C. §§ 1117(a), EnviroGLAS is entitled to recover three times its damages and Defendants' profits with respect to the registration and maintenance of the EnviroGLAS Domain Names.

147.    As an alternative to their actual damages, and at EnviroGLAS's election, EnviroGLAS is entitled to recover statutory damages in an amount up to $100,000 and not less than $1,000 for each of the EnviroGLAS Domain Names.

148.    This is an exceptional case within the meaning of 15 U.S.C. 1117, for which EnviroGLAS is entitled to recover its attorneys' fees.

## CLAIM EIGHTEEN
### (Declaratory Judgment – Direct Action)

149.    Plaintiffs repeat and re-allege all of the allegations in the paragraphs above as well as in the other counts of this complaint, as if set forth fully herein.

150.    Plaintiffs represent all of the shareholders in EnviroGLAS with the exception of Whaley.

151.    In order to prevent Whaley from benefiting from his misdeeds, justice requires that this action be treated as a direct action by the Flabianos under Article 5.14(L) of the Texas Business Corporation Act.

152.    Accordingly, Plaintiffs ask the Court to declare that this action be treated as a direct action by the Flabianos in the interest of justice, and that all sums recovered on behalf of EnviroGLAS should be disbursed equally to the Flabianos.

**CLAIM NINETEEN**

**(Correction of Inventorship of Patent – 35 U.S.C. § 256)**

153.    Plaintiffs repeat and re-allege all of the allegations in the paragraphs above as well as in the other counts of this complaint, as if set forth fully herein.

154.    One or more of the Flabianos was the inventor or a co-inventor of the invention described in the EnviroGLAS Patent.

155.    These inventors or co-inventors of the invention described in the EnviroGLAS Patent were omitted from the patent application and from the issued EnviroGLAS Patent;

156.    The Flabianos did not intend their omission from the patent application (and, consequently, the EnviroGLAS Patent) to be deceptive.

157.    Defendants dispute that one or more of the Flabianos was an inventor or co-inventor of the invention described in the EnviroGLAS Patent.

158.    The inventors or co-inventors are entitled to correction and/or substitution of the inventors named on the EnviroGLAS Patent.

**VI.**
**ATTORNEYS' FEES**

159.    Plaintiffs repeat and re-allege all of the allegations in the paragraphs above as well as in the other counts of this complaint, as if set forth fully herein.

160.    Plaintiffs have made demand on Whaley and EGL to cease and desist in the above-referenced misconduct and to reimburse it for the damages that it has suffered.  Whaley has failed and refused to do so, and Plaintiffs have retained the law firm of Haynes and Boone to prosecute this action on their behalf.

161.    Plaintiffs are entitled to recover their reasonable and necessary attorneys' fees and costs pursuant to, among other claims, their claims under the Lanham Act, the Declaratory

Judgment Act (28 U.S.C. § 2201 *et seq.*), the Texas Declaratory Judgment Act (Tex. Civ. Prac. & Rem. Code § 37.001 *et seq.*), and the Theft Liability Act (Tex. Civ. Prac. & Rem. Code 134.001 *et seq.*).

## VII.
## INJUNCTIVE RELIEF

162.    Plaintiffs repeat and re-allege all of the allegations in the paragraphs above as well as in the other counts of this complaint, as if set forth fully herein.

163.    EnviroGLAS is entitled to immediate and permanent injunctive relief.

164.    EnviroGLAS will suffer irreparable injury, for which no adequate remedy at law exists, if Defendants continue to use EnviroGLAS's intellectual property, including the EnviroGLAS Trademark, or if Defendants purport to transfer or license the EnviroGLAS Trademark.

165.    Such use, transfer or licensing would serve to devalue EnviroGLAS's rights, dilute or tarnish the EnviroGLAS Trademark, and cloud the market for products marketed under the EnviroGLAS Trademark or a confusingly similar mark.  If Defendants transfer or license the EnviroGLAS Trademark to outside parties, it may prove difficult or impossible for EnviroGLAS to secure title to the mark or to identify or recover damages from improperly-licensed parties. Therefore, to allow Defendants to continue to use the EnviroGLAS Trademark, or to purport to license or transfer the mark to additional parties, would cause EnviroGLAS irreparable harm outweighing any injury resulting to Defendants caused by the injunction.

166.    Moreover, EnviroGLAS will suffer irreparable injury, for which no adequate remedy at law exists, if Defendants continue to send groundless threatening letters to EnviroGLAS's customers, suppliers, and other entities involved in the terrazzo industry.

167.    Defendants' baseless letters have created confusion and uncertainty, have damaged EnviroGLAS's name and reputation, and have impeded EnviroGLAS's business.  It will be very difficult, if not impossible, for EnviroGLAS to accurately calculate damages resulting from Defendants' conduct.  Moreover, it will be impossible for EnviroGLAS to reverse the injury to its reputation and standing in the terrazzo industry as a result of Defendants' baseless accusations.

168.    Granting an immediate and permanent injunction in this case will not violate public policy.  Rather, public policy supports the speedy enforcement of intellectual property rights and the protection of the intellectual property.  Moreover, public policy disfavors the conduct undertaken by Defendants.

169.    An injunction should be granted preliminarily because EnviroGLAS has shown and will show that it will likely succeed on the merits if the case proceeds to trial.  EnviroGLAS will show that Whaley registered the mark on behalf of EnviroGLAS while he was an employee, officer, director, and shareholder of EnviroGLAS, and that the mark was first used commercially by Plaintiffs.  EnviroGLAS will show that it is likely to prevail on the merits because it holds equitable title to the EnviroGLAS Trademark.

170.    Moreover, an injunction should be granted preliminarily because EnviroGLAS will show that Defendants are estopped from asserting any alleged rights in the EnviroGLAS Trademark and the EnviroGLAS Patent against EnviroGLAS or American Terrazzo (including any of EnviroGLAS's customers, suppliers, or other business partners).  In addition, Defendants have waived any such rights and are barred from asserting such rights by the doctrines of laches, unclean hands, and implied license.

171.    EnviroGLAS therefore requests that the Court preliminarily enjoin Defendants or anyone acting in concert with them from sending any communications to EnviroGLAS's

customers, suppliers, or other participants in the terrazzo industry accusing Plaintiffs of infringing the EnviroGLAS Patent or the EnviroGLAS Trademark based on any dealings with EnviroGLAS or ATC.

172.     EnviroGLAS further requests that the Court preliminarily and permanently enjoin Defendants and any person acting in concert with them from using, transferring, assigning, or licensing third parties under the EnviroGLAS Trademark.

## VIII.
## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request:

(1)     that the Court declare that:

    a.  EnviroGLAS is the owner of the EnviroGLAS Trademark and the EnviroGLAS Patent (and that the relevant records be reformed to reflect this), or, in the alternative, that these assets are held in a constructive trust benefiting EnviroGLAS, or, in the alternative, that Plaintiffs do not infringe the EnviroGLAS Patent or EnviroGLAS Trademark, or that Plaintiffs hold perpetual and exclusive license under the EnviroGLAS Patent and EnviroGLAS Trademark;

    b.  EnviroGLAS has a possessory and ownership interest in the Domain Names and Email Accounts superior to any such right that Defendants claim;

    c.  EnviroGLAS owns all of the office equipment and furniture at issue in this suit; and

    d.  This action will be treated as a direct action by the Flabianos under Article 5.14(L) of the Texas Business Corporation Act, so that any damages recovered on behalf of EnviroGLAS will be recovered directly by the Flabianos.

(2)     that the Court award Plaintiffs all damages suffered as a result of Defendants' unlawful and tortious conduct;

(3)     that the Court award Plaintiffs exemplary damages for Whaley's breaches of his fiduciary duties, fraud, theft, and other tortious conduct;

(4)     that, in the alternative, the Court award Plaintiffs all sums advanced to Defendants;

(5)     that the Court award Plaintiffs their reasonable attorneys' fees and costs of suit as provided by statute;

(6)     that the Court preliminarily and permanently enjoin Defendants and all persons acting in concert with them from: using, assigning, transferring, or licensing the EnviroGLAS Trademark to any third party; and

(7)     that the Court award Plaintiffs all other relief, in law and in equity, to which they may be entitled.

## IX.
## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury in this action on all issues so triable.


Dated:  April 9, 2009                                    Respectfully submitted,


                                                         /s/ David H. Harper (by permission LSK)
                                                         David H. Harper
                                                         State Bar No. 09025540
                                                         Layne S. Keele
                                                         State Bar No. 24050856

                                                         HAYNES AND BOONE, L.L.P.
                                                         2323 Victory Avenue
                                                         Suite 700
                                                         Dallas, Texas 75219
                                                         Telephone: [214] 651.5000
                                                         Telecopier: [214] 651.5940

                                                         ATTORNEYS FOR PLAINTIFFS
                                                         ENVIROGLAS PRODUCTS, INC.,
                                                         DARIN FLABIANO, BRANDON
                                                         FLABIANO, BRENTON FLABIANO,
                                                         WILTON FLABIANO, AND AMERICAN
                                                         TERRAZZO COMPANY, LTD.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 9th day of April, 2009, the foregoing document was served upon all counsel of record in accordance with the Federal Rules of Civil Procedure and Local Rules of the Northern District of Texas through the Court's electronic filing system.


                                                         /s/ Layne S. Keele
                                                         Layne S. Keele