UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ENVIROGLAS PRODUCTS, INC., ET AL., | ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION NO. |
| VS. | ) ) | 3:09-CV-0265-G |
| ENVIROGLAS PRODUCTS, LLC, ET AL, | ) ) ) | **ECF** |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court are the motions of the defendants EnviroGLAS LLC ("EGL")

and Timothy Whaley ("Whaley") to dismiss this case for lack of subject matter

jurisdiction, improper venue, failure to state a claim, and failure to plead with

particularity.  For the reasons discussed below, Whaley's motion to dismiss the

plaintiffs' claim for correction of named inventor under 35 U.S.C. § 256 for lack of

subject matter jurisdiction is granted.  In all other respects, the motions are denied.

## I.  BACKGROUND

The plaintiff EnviroGLAS Products, Inc. ("EnviroGLAS") is a Texas

corporation with its principal place of business in Garland, Texas.  Plaintiffs' First

Amended Complaint for Monetary, Injunctive, and Declaratory Relief ("Complaint") ¶ 2.  The City of Garland is located in Dallas County.  *Klepper v. State*, No. 05-02-01283-CR, 2003 WL 22663508, *3 (Tex. App.--Dallas 2003, pet. denied).  Dallas County is located in the Dallas Division of this district.  28 U.S.C. § 124(a)(1).

The plaintiff American Terrazzo Company, Ltd. ("ATC") is a Texas limited partnership with its principal place of business in Garland, Texas.  Complaint ¶ 3.

The plaintiffs Darin Flabiano, Brandon Flabiano, Brenton Flabiano, and Wilton Flabiano (collectively, "the Flabianos"), all Texas residents, are EnviroGLAS shareholders and owners of ATC.  *Id*. ¶¶ 4, 11.

Whaley, a Plano, Texas resident, is the former president of EnviroGLAS.  *Id*. ¶¶ 1, 6; In Response to Plaintiffs' First Amended Complaint Defendants' [sic] File This Amended Brief in Support of 12(b) Motions to Dismiss for Improper Venue, Failure to State a Claim, Lack of Subject Matter Jurisdiction and Rule 9(b) Motions for Failure to Plead with Proper Particularity ("Motion") ¶ 10.  He was an officer, director, and 50% shareholder of EnviroGLAS.  Complaint ¶ 49.  The City of Plano is located in Collin County.  *Roach v. Bloom*, No. 3:08-CV-439-L, 2009 WL 667218, *3, n.1 (N.D. Tex. March 16, 2009).  Collin County is located in the Eastern District of Texas, Sherman Division.  28 U.S.C. § 124(c)(3).

The defendant EGL is a Texas member-managed limited liability company with its principal place of business in Plano, Texas.  Complaint ¶ 5.

In 2002, EGL and Whaley entered into discussions in Dallas County with two of ATC's principals, Brenton Flabiano and Mattia Flabiano, Jr., regarding a partnership to create and to manufacture a terrazzo flooring from crushed glass. *Id*. ¶ 10; Plaintiffs' Appendix in Support of Their Response to Defendants' Motion to Dismiss ("Response Appendix") at Plaintiffs' App. 13. At the time, Whaley was a manufacturer's representative for a supplier used by ATC. Response Appendix at Plaintiffs' App. 13. After Mattia Flabiano, Jr. died, the Flabianos and Whaley formed a partnership for the purpose of manufacturing and promoting this new surface. Complaint ¶ 11. The majority of the discussions regarding the formation of EnviroGLAS occurred at the ATC offices in Garland, Texas, or via phone calls by Whaley to that office. *Id*. ¶ 14; Response Appendix at Plaintiffs' App. 14. The parties met regularly in Garland, Texas, to discuss the use of a recycled glass aggregate in epoxy terrazzo. Response Appendix at Plaintiffs' App. 14. The parties agreed that Whaley would serve as EnviroGLAS president and would work for the company full time. Complaint ¶ 15. Whaley took the principal role in marketing and promoting the product. *Id*. ¶ 11. ATC and the Flabianos were the financial backers of the product and allowed the ATC name and brand to be associated with the product. *Id*. The Flabianos infused almost $1 million into EnviroGLAS. *Id*. ¶ 16.

In 2003, the Flabianos and Whaley consummated their partnership by forming EnviroGLAS.  *Id*. ¶ 12.  Precast terrazzo units were manufactured for EnviroGLAS in Garland, Texas.  Response Appendix at Plaintiffs' App. 14.

On May 27, 2003, Whaley applied to register the trademark "ENVIROGLAS[.]"  United States Patent and Trademark Office correspondence, *located in* Appendix to Complaint as Exhibit H.  Whaley listed his address as 3941 Legacy Drive, Plano, Texas  75023.  *Id*.  On July 27, 2004, Whaley was issued U.S. Trademark No. 2,866,288 ("Trademark").  Trademark Principal Register, *located in* Appendix to Complaint as Exhibit B.

On June 5, 2003, Whaley filed a patent application for the "Method of Making a Terrazzo Surface from Recycled Glass."  United States Patent, *located in* Appendix to Complaint as Exhibit A.  The patent ("Patent"), U.S. Patent No. 6,770,328, was issued to Whaley, of 3941 Legacy Drive, Plano, Texas  75023, on August 3, 2004.  *Id*.  Whaley submitted receipts to ATC to secure reimbursement of the fees paid to obtain the Patent and the Trademark.  Complaint ¶ 21.

On July 9, 2003, EnviroGLAS was registered with the Texas Secretary of State. *Id*. ¶ 13.

On January 10, 2007, Whaley -- while still an officer and director of EnviroGLAS -- filed a certificate of formation for EGL, another company bearing a

name nearly identical to EnviroGLAS, without the consent or knowledge of the plaintiffs. *Id*. ¶ 22.

The plaintiffs allege that Whaley formed a "nefarious plan" to allow ATC and the Flabianos to fund EnviroGLAS while the company was starting up, but that once the business began to prosper, Whaley intended to start his own competing business and use the EnviroGLAS name. *Id*. ¶¶ 18, 22. They further assert that although Whaley knew that the flooring was the intellectual property of EnviroGLAS and/or ATC, he applied for the Patent and Trademark on the flooring under his own name using EnviroGLAS funds. *Id*. ¶ 21. Whaley, on the other hand, maintains that the Flabianos and ATC have used -- and continue to use -- the Patent and the Trademark without his authority. Appendix to Defendants' Amended Motion and Brief in Response to Plaintiffs' First Amended Complaint in Support of 12(b) Motions to Dismiss for Improper Venue, Failure to State a Claim, Lack of Subject Matter Jurisdiction and Rule 9(b) Motions for Failure to Plead with Proper Particularity ("Motion Appendix") at 000003-000004. Whaley further asserts that "The [Trademark and Patent] were . . . owned by me and the Flabiano brothers thought they were worthless." *Id*. at 000003.

The plaintiffs assert that Whaley's principal office was in ATC's offices in Garland, Texas, where he was present almost daily during the work week and at times on the weekends. Response Appendix at Plaintiffs' App. 15. Initially, all of the

EnviroGLAS bookkeeping was performed in Garland, Texas but later was outsourced to a company in Arlington, Texas, both of which are in the Northern District of Texas. *Id*. at 14. At least once -- and sometimes twice -- a month, Whaley submitted expense reports and reimbursement requests to ATC and/or EnviroGLAS offices in Garland, Texas. *Id*.

On May 7, 2007, Whaley resigned as EnviroGLAS president. Complaint ¶ 28. Before his resignation, Whaley began to pull customers away from EnviroGLAS to EGL. *Id*. ¶ 30. The plaintiffs further aver that in addition to stealing EnviroGLAS's customers, intellectual property, and sales representatives, Whaley also took EnviroGLAS's money by transferring funds from EnviroGLAS accounts to his own and by taking EnviroGLAS equipment, including computers, desks, and other supplies, to jumpstart EGL. *Id*. ¶¶ 31-35, 39. After Whaley's departure from EnviroGLAS, he continued to access the company's e-mail accounts and to use the EnviroGLAS domain names, trademark, patent, website, and email addresses on behalf of EGL. *Id*. ¶ 40. These activities included using the Trademark and dealing with customers in Dallas County. *Id*. ¶ 41. ATC and the Flabianos were apparently unaware of Whaley's activities until later. *Id*. ¶¶ 23, 42, 44.

In a letter dated March 25, 2009, counsel for the defendants sent Brent Flabiano a letter demanding that he cease and desist further infringement of the Patent and Trademark. Letter from James C. Mosser to Brent Flabiano dated

March 25, 2009, *located in* Appendix to Complaint as Exhibit F.  Similar letters were

sent to EnviroGLAS customers and other terrazzo industry members accusing ATC of

infringing the Patent and Trademark.  Complaint ¶¶ 46-47; *see also* Letter from

James C. Mosser to Robert Cain dated March 26, 2009, *located in* Appendix to

Complaint as Exhibit G.

On February 10, 2009, the plaintiffs filed this suit alleging that Whaley

breached his fiduciary duty to them, had committed fraud by non-disclosure, had

made a false or fraudulent representation to the United States Patent and Trademark

Office, and sought to recover in *quantum meruit* all sums Whaley used for his benefit.

*See generally* Complaint.  Additionally, the plaintiffs  brought claims against the

defendants for conversion, tortious interference with existing and prospective

relations, misappropriation of trade secrets, unfair competition/misappropriation,

injury to business relations, and violations of the Texas Theft Liability Act and the

Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq*., the Lanham Act, 15 U.S.C.

§ 1125(a)(1)(a), and the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C.

§ 1125(d).  *Id*.  The plaintiffs also seek correction of inventorship of the patent, as

well as declaratory judgments, injunctive relief, attorneys' fees, and damages.  *Id*.

EGL and Whaley move to dismiss for lack of subject matter jurisdiction,

improper venue, failure to state a claim, and failure to plead with particularity.

## II.  ANALYSIS

### A.  Subject Matter Jurisdiction

The plaintiffs claim that one or more of the Flabianos was the inventor or co-inventor of the Patent and, as such, are entitled to correction or substitution of the inventors named on the Patent.  Complaint ¶¶ 154, 158.  EGL and Whaley move to dismiss the plaintiffs' claims for correction of the inventorship of the patent and for a declaratory judgment regarding the Patent because the plaintiffs lack standing without legal title.  Motion ¶¶ 29, 30, 36.

Article III of the United States Constitution limits the jurisdiction of the federal courts to "cases" and "controversies."  U.S. CONST. Art. III § 2.  Standing -- *i.e.*, the need to show that the plaintiff has a direct, personal stake in the outcome of the suit -- is an "essential and unchanging part" of this case-or-controversy requirement.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  "The federal courts are under an independent obligation to examine their own jurisdiction, and standing is perhaps the most important of [the jurisdictional] doctrines."  *United States v. Hays*, 515 U.S. 737, 742 (1995) (quoting *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 230-231 (1990)) (internal quotation marks omitted); see also *Sommers Drug Stores Company Employment Profit Sharing Trust v. Corrigan*, 883 F.2d 345, 348 (5th Cir. 1989) ("'Standing, since it goes to the very power of the court to act, must exist at all stages of the proceeding, and not merely when the action is initiated or during

an initial appeal.'") (quoting *Safir v. Dole*, 718 F.2d 475, 481 (D.C. Cir. 1983), *cert.*

*denied*, 476 U.S. 1206 (1984)); *University of South Alabama v. American Tobacco*

*Company*, 168 F.3d 405, 410 (11th Cir. 1999) (noting that "it is well settled that a

federal court is obligated to inquire into subject matter jurisdiction *sua sponte*

whenever it may be lacking."). As the Supreme Court explained in *Lujan*, the

"irreducible constitutional minimum of standing" has three elements:

> First, the plaintiff[s] must have suffered an "injury in fact"
> -- an invasion of a legally protected interest which is
> (a) concrete and particularized, and (b) "actual or
> imminent, not 'conjectural' or 'hypothetical.'" Second,
> there must be a causal connection between the injury and
> the conduct complained of -- the injury has to be "fairly
> . . . trace[able] to the challenged action of the defendant,
> and not . . . th[e] result [of] the independent action of
> some third party not before the court." Third, it must be
> "likely," as opposed to merely "speculative," that the injury
> will be "redressed by a favorable decision."

504 U.S. at 560 (internal citations and footnote omitted).

Lack of standing is a defect in subject matter jurisdiction. See *Haase v. Sessions*,

835 F.2d 902, 906 (D.C. Cir. 1987) (citing *Bender v. Williamsport Area School District*,

475 U.S. 534, 541 (1986)); see also *Corrigan*, 883 F.2d at 348 ("standing is essential

to the exercise of jurisdiction, and . . . lack of standing can be raised at any time by a

party or by the court.") (citing *United States v. One 18th Century Colombian Monstrance*,

797 F.2d 1370, 1374 (5th Cir. 1986), *cert. denied*, 481 U.S. 1014 (1987)).

Federal district courts have the unique power to make factual findings which are decisive of subject matter jurisdiction.  See *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir.) (citing, among other authorities, *Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947)), *cert. denied*, 454 U.S. 897 (1981).  The district court has the power to dismiss for lack of subject matter jurisdiction -- and thus for lack of standing -- on any one of three separate bases:  "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Williamson*, 645 F.2d at 413; *Robinson v. TCI/US West Communications Inc.*, 117 F.3d 900, 904 (5th Cir. 1997); see also *Haase*, 835 F.2d at 907 (noting that, to the extent the assessment of a plaintiff's standing turns on factual evidence, a court may consider all matters developed in the record at the time of its decision).  While the burden is on the party seeking to invoke the federal court's subject matter jurisdiction to establish the requisite standing requirements, that burden need be met only by a preponderance of the evidence.  See *Hartford Insurance Group v. Lou-Con Inc.*, 293 F.3d 908, 910 (5th Cir. 2002).

Under 35 U.S.C. § 256, "[w]henever through error . . . an inventor is not named in an issued patent and such error arose without any deceptive intention on his part, . . . [t]he court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the

Director shall issue a certificate accordingly."  This statute does not apply to cases in which one inventor applies for and obtains a patent in his own name and is only meant to correct "innocent errors."  *K-Tek Corporation v. Lovett*, 924 F. Supp. 57, 58-59 (M.D. La. Feb. 5, 1996).  Therefore, the defendants' motion to dismiss -- for lack of subject matter jurisdiction -- the plaintiffs' claim for correction of named inventor under 35 U.S.C. § 256 is granted.

Whether the plaintiffs are entitled to relief under 35 U.S.C. § 256, however, is arguably mooted by the fact that they can be afforded the same relief under their claim, brought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, that EnviroGLAS is the owner of the Trademark and Patent, that the records of the United States Patent and Trademark Office be reformed to reflect that EnviroGLAS is the owner of the Trademark, and that EnviroGLAS has ownership and rights in the Patent.  See *Chou v. The University of Chicago*, 254 F.3d 1347, 1360 (Fed. Cir. 2001); *see also* Complaint ¶ 111.  Should the plaintiffs prevail on this declaratory judgment claim, they could then file a new claim under 35 U.S.C. § 256.

The Flabianos assert that "an actual controversy exists between the parties within the meaning of 28 U.S.C. § 2201, as demonstrated in part by the threatening letters [of infringement] sent by defendants or their representatives."  Complaint ¶¶ 74, 110, 113.  The Declaratory Judgment Act allows federal courts the opportunity to "declare the rights and other legal relations of any interested party seeking such

declaration . . . ."  28 U.S.C. § 2201(a).  The Fifth Circuit has long held that parties

with legal interests threatened in an actual controversy have standing to sue under the

Declaratory Judgment Act.  See, *e.g.*, *Vantage Trailers, Inc. v. Beall Corporation*, 567

F.3d 745, 748 (5th Cir. 2009); *Collin County, Texas v. Homeowners Association for Values

Essential to Neighborhoods (HAVEN)*, 915 F.2d 167, 170 (5th Cir. 1990).  A

declaratory judgment is often sought before a completed injury-in-fact has occurred,

*United Transportation Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000), and

"declaratory actions contemplate an '*ex ante* determination of rights,'"  *Rhode Island v.

Narragansett Indian Tribe*, 19 F.3d 685, 692 (1st Cir.) (quoting *Step-Saver Data

Systems, Inc. v. Wyse Technology*, 912 F.2d 643, 647 (3d Cir. 1990)), *cert. denied*, 513

U.S. 919 (1994).  However, the Declaratory Judgment Act does not extend the

subject matter jurisdiction of the court beyond the limits delineated in Article III of

the United States Constitution.  *Skelly Oil Company v. Phillips Petroleum Company*, 339

U.S. 667, 671 (1950); see also *Okpalobi v. Foster*, 244 F.3d 405, 434 (5th Cir. 2001)

(en banc) ("[T]he Declaratory Judgment Act does not itself grant federal

jurisdiction.").  Declaratory judgments "still must be limited to the resolution of an

'actual controversy.'"  *United Transportation*, 205 F.3d at 857 (citing *Aetna Life

Insurance Company v. Haworth*, 300 U.S. 227, 239-40 (1937)); see also *Standard Fire

Insurance Company v. Sassin*, 894 F. Supp. 1023, 1026 (N.D. Tex. 1995) (Sanders, J.)

("The Declaratory Judgment Act does not exempt federal district courts from the

- 12 -

constitutional requirement that there be an actual controversy between the parties.").

At the same time, "[i]t is well-established that the phrase 'actual controversy' in

§ 2201(a) includes any controversy over which there is Article III jurisdiction."

*Caraco Pharmaceutical Laboratories, Limited v. Forest Laboratories, Inc.*, 527 F.3d 1278,

1290 (Fed. Cir. 2008) (citing *Aetna Life Insurance Company*, 300 U.S. at 239-40), *cert.*

*denied*, __ U.S. __, 129 S. Ct. 1316 (2009); see also *Young v. Vannerson*, 612 F. Supp.

2d 829, 840 (S.D. Tex. 2009) ("[S]howing a controversy for the purpose of a

declaratory judgment action requires no greater showing than is required under

Article III." (citing *MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118, 126-27 (2007))).

Article III jurisdiction may be met where the patentee takes a position that

puts the declaratory judgment plaintiff in the position of either pursuing arguably

illegal behavior or abandoning that which it claims the right to do. *SanDisk*

*Corporation v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1381 (Fed. Cir. 2007).  It

follows that where a trademark holder asserts rights under a trademark based on

certain identified ongoing or planned activity of another party, and where that party

contends it has the right to engage in the accused activity without a license, an Article

III case or controversy will arise and the party need not risk a suit for infringement by

engaging in the identified activity before seeking a declaration of its legal rights.  See

*id*.

Here, the cease and desist letters were affirmative acts that demonstrated Whaley's willingness and intent to enforce his patent and trademark rights.  In particular, the letter to Brent Flabiano was intended to induce the plaintiffs to refrain from selling the product.  Furthermore, by his own declaration, Whaley has alleged infringement of the Patent and Trademark.  *See generally* Motion Appendix at 000003-000004.  As a result, the court finds that the plaintiffs have standing to assert this declaratory judgment claim.

## B. Venue

The plaintiffs maintain that venue is proper in the Northern District of Texas because EGL resides in this district and a substantial part of the events giving rise to this litigation occurred in this district.  Plaintiffs' Response to Defendants' Motion to Dismiss ("Response") at 3; Complaint ¶ 9.  The defendants, on the other hand, contend that the court should dismiss this case or transfer venue to the Eastern District of Texas, Sherman Division, because the defendants do not reside within the Northern District of Texas, Dallas Division, nor did a substantial part of the events forming the basis of the plaintiffs' claims occur in this district.  Motion ¶¶ 3, 9, 14.

### 1. Motion To Dismiss for Improper Venue

Once defendants raise the issue of improper venue, the plaintiffs have the burden to prove that the chosen venue is proper.  *Psarros v. Avior Shipping, Inc.*, 192 F. Supp.2d 751, 753 (S.D. Tex. 2002).  In the absence of an evidentiary hearing, the

plaintiffs may carry their burden by presenting facts that, taken as true, establish

venue. *Optimum Return LLC v. CyberKatz Consulting, Inc.*, No. 3:03-CV-1064-D, 2004

WL 827835, at *4 (N.D. Tex. March 26, 2004) (citing *Laserdynamics, Inc. v. Acer*

*America Corporation*, 209 F.R.D. 388, 390 (S.D. Tex. 2002)). The court may look

outside of the complaint and its attachments and review the complaint supplemented

by the undisputed facts evidenced in the record or by undisputed facts plus the

court's resolution of disputed facts. *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238

(5th Cir. 2009), *cert. denied*, __ U.S. __, 130 S. Ct. 1054 (2010). "On a Rule

12(b)(3) motion to dismiss for improper venue, the court must accept as true all

allegations in the complaint and resolve all conflicts in favor of the plaintiff."

*Braspetro Oil Services Co. v. Modec (USA), Inc.*, 240 F. App'x. 612, 615 (5th Cir. 2007)

(citing *Murphy v. Schneider National, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004)).

In their complaint, the plaintiffs allege that EGL's principal office is in Plano,

Texas, and that Whaley may be served with process in that office. Complaint ¶¶ 5, 6.

The defendants insist that EGL has always been headquartered at that office and that

Whaley is a resident of Plano, Texas. Motion ¶ 10. Thus, the defendants maintain,

this suit should have been brought against them in the Eastern District of Texas,

Sherman Division. *Id*. The plaintiffs allege that Whaley's primary office was located

in ATC's offices in Garland, Texas, during his tenure with EnviroGLAS. Complaint

¶ 14; Response Appendix at Plaintiffs' App. 14-15. They further contend that after

Whaley left EnviroGLAS, he operated EGL out of the office EnviroGLAS paid for
and intended to use.  Complaint ¶ 34.  The defendants point out that this office was
located in Plano, Texas.  Motion ¶ 13.  The plaintiffs complain that EGL infringed
the Trademark by stealing the EnviroGLAS domain name, selling infringing goods
within the Northern District of Texas, and cybersquatting with the knowledge that
these activities would injure the plaintiffs in this district.  Response at 6.  The
plaintiffs direct the court to http://www.enviroglasproducts.com/testimonials.asp on
which two of the five testimonials displayed on the website are from customers in the
Northern District of Texas (*i.e.*, Dallas and Arlington).  *Id*.

The plaintiffs argue that venue is proper in this court under 28 U.S.C. § 1391
because on or more of the defendants reside in this district and because all or a
substantial part of the events giving rise to this action occurred within this district
and division.  Complaint ¶ 9.  Under 28 U.S.C. § 1391,

> (b)  A civil action wherein jurisdiction is not founded solely
> on diversity of citizenship may, except as otherwise
> provided by law, be brought only in (1) a judicial district
> where any defendant resides, if all defendants reside in the
> same State, (2) a judicial district in which a substantial
> part of the events or omissions giving rise to the claim
> occurred, or a substantial part of property that is the
> subject of the action is situated, or (3) a judicial district in
> which any defendant may be found, if there is no district in
> which the action may otherwise be brought.

> (c)  For purposes of venue under this chapter, a defendant
> that is a corporation shall be deemed to reside in any
> judicial district in which it is subject to personal

> jurisdiction at the time the action is commenced. In a State
> which has more than one judicial district and in which a
> defendant that is a corporation is subject to personal
> jurisdiction at the time an action is commenced, such
> corporation shall be deemed to reside in any district in that
> State within which its contacts would be sufficient to
> subject it to personal jurisdiction if that district were a
> separate State, and, if there is no such district, the
> corporation shall be deemed to reside in the district within
> which it has the most significant contacts.[1]

*Id*. The plaintiffs have not demonstrated that the defendants are residents of the

Northern District of Texas, as required by 28 U.S.C. § 1391(b)(1).  However, the

court finds that venue in this district is proper under 28 U.S.C. § 1391(b)(2) because

a substantial part of the events giving rise to the plaintiffs' claims occurred in this

district.

## 2.  Motion to Transfer Venue

In the alternative, the defendants move to transfer this case to the Eastern

District of Texas, Sherman Division, where the defendants reside and maintain their

principal office.  Motion ¶ 11; Defendants' Reply to Plaintiffs' Response to

Defendants' Amended Motion to Dismiss ("Reply") ¶¶ 4, 5.  The plaintiffs did not

respond to this motion.

---

[1]      "Although section 1391(c) appears to apply only to corporations, unincorporated associations such as partnerships are analogous to corporations for venue purposes."  *Nayani v. Horseshoe Entertainment*, 2007 WL 1062561, at *8 (N.D. Tex. 2007) (citing *Penrod Drilling Company v. Johnson*, 414 F.2d 1217, 1220-21 (5th Cir. 1969), *cert. denied*, 396 U.S. 1003 (1970)).

A district court may transfer any civil case "[f]or the convenience of parties and witnesses, in the interest of justice, . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of Section 1404(a) "is to prevent the waste 'of time, energy, and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense. . . .'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Continental Grain Company v. Barge FBL-585*, 364 U.S. 19, 26-27 (1960)). The decision to transfer a pending case is committed to the sound discretion of the district court. *Jarvis Christian College v. Exxon Corporation*, 845 F.2d 523, 528 (5th Cir. 1988).

"It is well settled that the party moving for a change of venue bears the burden of demonstrating why the forum should be changed." *Dupre v. Spanier Marine Corporation*, 810 F. Supp. 823, 825 (S.D. Tex. 1993) (citing *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966)). Placing the burden on the moving party to show "good cause" for the transfer "reflects the appropriate deference to which the plaintiff's choice of venue is entitled." *In re Volkswagen of America, Inc.*, 545 F.3d 304, 314 n.10 (5th Cir. 2008) (en banc), *cert. denied*, __ U.S. __, 129 S. Ct. 1336 (2009). *Id.* at 315. Therefore, if the transferee district "is not clearly more convenient," the plaintiff's choice of venue must be respected. *Id.*

"The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue." *Id.* at 312. This requires a finding that

the transferee court has jurisdiction over the defendant and venue would be proper.

*Frost v. ReliOn, Inc.*, No. 3:06-CV-0822-G, 2007 WL 670550, at *2 (N.D. Tex.

Mar. 2, 2007). Once this is established, the court must weigh the private and public

interest factors in order to determine "whether a § 1404(a) venue transfer is for the

convenience of parties and witnesses and in the interest of justice." *Volkswagen*, 545

F.3d at 315.

> The private interest factors are: "(1) the relative ease of
> access to sources of proof; (2) the availability of
> compulsory process to secure the attendance of witnesses;
> (3) the cost of attendance for willing witnesses; and (4) all
> other practical problems that make trial of a case easy,
> expeditious and inexpensive." . . . The public interest
> factors are: "(1) the administrative difficulties flowing
> from court congestion; (2) the local interest in having
> localized interests decided at home; (3) the familiarity of
> the forum with the law that will govern the case; and
> (4) the avoidance of unnecessary problems of conflict of
> laws [or in] the application of foreign law.

*Id.* (quoting *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004)). This list of

factors is neither exhaustive nor exclusive and no single factor is given dispositive

weight. *Id.*

As a threshold matter, the language of Section 1404(a) requires the court to

determine whether the proposed transferee district is one in which the suit might

have been brought. *Illinois Union Insurance Company v. Tri Core, Inc.*, 191 F. Supp.2d

794, 797 (N.D. Tex. 2002). Such a district "is one in which upon commencement of

the suit the plaintiff ha[d] a right to sue independently of the wishes of the

defendant." *Independent Fish Company v. Phinney*, 252 F. Supp. 952, 953 (W.D. Tex. 1966) (citing *Hoffman v. Blaski*, 363 U.S. 335 (1960)).  The first question is whether or not the Eastern District of Texas would have been a proper venue for this lawsuit. This suit could have been brought in any "judicial district where any defendant resides, if all defendants reside in the same State."  28 U.S.C. §1391(b)(1). Accordingly, venue would be proper in the Eastern District of Texas because all the defendants are Texas residents, and because the defendants are located in the Eastern District of Texas.  Though the defendants have satisfied the first part of the inquiry, more must be shown to warrant a transfer of venue.

Since the defendants have failed to present any arguments concerning any of the other factors, the court will assume that they are either neutral or do not favor transfer.  Having fully considered the equities in this case, the court concludes that none of the evidence or arguments presented by the defendants are sufficient to outweigh the plaintiffs' choice of forum.  Therefore, the motion to transfer is denied.

### C. Rule 12(b)(6) Failure to State a Claim

EGL and Whaley assert that the plaintiffs have failed to state a claim that Whaley breached his fiduciary duty to EnviroGLAS or to the Flabianos.  Motion ¶ 17.  In particular, the defendants contend that Whaley owed no duty to the Flabianos because shareholders of closely held corporations do not owe fiduciary duties to one another.  They further contend that there is no confidential relationship

between Whaley and the Flabianos and that the plaintiffs have failed to plead facts showing that EnviroGLAS is a close corporation for purposes of fiduciary duties. *Id*. ¶¶ 18, 20-26. The plaintiffs counter that the parties partnered prior to forming EnviroGLAS, and that "partners and joint venturers owe one another fiduciary duties as a matter of law." Response at 9 (citing *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2007)). The plaintiffs further aver that Whaley owed a duty to them as a majority shareholder. Response at 9.

Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). There are two primary principles that guide the court's determination of whether dismissal under Rule 12(b)(6) should be granted. First, a motion under Rule 12(b)(6) should be granted only if it appears beyond doubt that the nonmovants could prove no set of facts in support of their claims that would entitle them to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Leffall v. Dallas Independent School District*, 28 F.3d 521, 524 (5th Cir. 1994); see also *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982) (citing 5B WRIGHT & MILLER § 1357 at 598 (1969), for the proposition that "the motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted"), *cert. denied*, 459 U.S. 1105 (1983). Second, the court must accept all well-pleaded facts as true and view them in the light most favorable to the nonmovants. See *Capital Parks, Inc. v. Southeastern Advertising*

- 21 -

*and Sales System, Inc.*, 30 F.3d 627, 629 (5th Cir. 1994); *Norman v. Apache Corporation*, 19 F.3d 1017, 1021 (5th Cir. 1994); *Chrissy F. by Medley v. Mississippi Department of Public Welfare*, 925 F.2d 844, 846 (5th Cir. 1991).  However, conclusory allegations and unwarranted factual deductions will not suffice to avoid a motion to dismiss. *United States ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 379 (5th Cir. 2003).  In addition, a court must not look beyond the pleadings when determining whether a complaint states a claim upon which relief may be granted. *Carpenters Local Union No. 1846 v. Pratt-Farnsworth, Inc.*, 690 F.2d 489, 499-500 (5th Cir. 1982), *cert. denied*, 464 U.S. 932 (1983).  The court concludes that the defendants have failed to show that the plaintiffs could prove no set of facts in support of their claims that would entitle them to relief.  See *Conley*, 355 U.S. at 45-46.

### D.   Rule 9(b) Failure to Plead Fraud with Particularity

Whaley moves to dismiss claims against him for fraud by non-disclosure and the making of a false or fraudulent representation to the United States Patent and Trademark Office, and both defendants move to dismiss the claims against them for violation of the Computer Fraud and Abuse Act for failure to state these allegations of fraud with particularity.  Motion ¶¶ 40, 53-54.

Under Federal Rule of Civil Procedure 9(b), a plaintiff must state with particularity the circumstances establishing a claim of fraud.[2]  FED. R. CIV. P. 9(b). What constitutes particularity will "necessarily differ with the facts of each case." *Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992).  At a minimum, courts require the plaintiffs to specifically state the time, place, and contents of the alleged false representation, as well as the identity of the person making the alleged misrepresentation and what that person obtained thereby.  See *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 177 (5th Cir.) (citing *Tuchman v. DSC Communications Corporation*, 14 F.3d 1061, 1068 (5th Cir. 1994)), *cert. denied*, 522 U.S. 966 (1997); *United States ex rel. Doe v. Dow Chemical Company*, 343 F.3d 325, 328 (5th Cir. 2003) ("At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud.") (citation omitted).  "Anything less fails to provide defendants with adequate notice of the nature and grounds of the claim." *Hart v. Bayer Corporation*, 199 F.3d 239, 247 n.6 (5th Cir. 2000) (citing *Tuchman,* 14 F.3d at 1067).  Dismissal of a fraud claim for failure to plead the claim with particularity under Rule 9(b) is treated as a dismissal for failure to state a claim under Rule 12(b)(6).  See *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996).

---

[2]        Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.  Malice, intent, knowledge, and other condition of mind of a person may be averred generally."  *Id*.

To state a cause of action for fraud under Texas law, the plaintiffs must allege sufficient facts to show:  (1) Whaley made a material representation that was false; (2) he knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) he intended to induce the plaintiffs to act upon the representation; and (4) the plaintiffs actually and justifiably relied upon the representation and thereby suffered injury.  *Ernst & Young, L.L.P. v. Pacific Mutual Life Insurance Company*, 51 S.W.3d 573, 577 (Tex. 2001); see also *Norman*, 19 F.3d at 1022.  For an actionable nondisclosure fraud to lie, there must be a duty to disclose. See *Ralston Purina Company v. McKendrick*, 850 S.W.2d 629, 633 (Tex. App.--San Antonio 1993, writ denied); see also *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 341 (5th Cir. 2008) (citation omitted).  "This is entirely a question of law, to be decided by reference to statutory and case law . . .." *Id.*  Texas law provides that a duty to disclose may arise in the following situations:  "(1) when there is a fiduciary relationship; (2) when one voluntarily discloses information, the whole truth must be disclosed; (3) when one makes a representation, new information must be disclosed when that new information makes the earlier representation misleading or untrue; and (4) when one makes a partial disclosure and conveys a false impression." *Hoggett v. Brown*, 971 S.W.2d 472, 487 (Tex. App.--Houston [14th Dist.] 1997, writ denied). The plaintiffs allege that Whaley had a duty to disclose due to his fiduciary relationship with them, and that his partial disclosures to them conveyed a false

impression.  Complaint ¶ 56.  The complaint adequately outlines Whaley's scheme and the plaintiffs' reliance on his alleged false, material  representation thereby suffering injury.  See *id*. ¶¶ 57-62.  Thus, Whaley's motion to dismiss the plaintiffs' fraud by non-disclosure claim is denied.

Whaley also moves to dismiss the claim against him for the making of a false or fraudulent representation to the United States Patent and Trademark Office.  The court finds that the plaintiffs have sufficiently pleaded this alleged fraudulent representation.  *See* Complaint ¶¶ 21, 105; *see* also Appendix to Complaint, Exhibit C. Thus, Whaley's motion to dismiss this claim is denied.

Both defendants move to dismiss the claims against them for violation of the Computer Fraud and Abuse Act for failure to state these allegations of fraud with particularity.  Because the Computer Fraud and Abuse Act does not require a heightened pleading standard, see *SKF USA, Inc. v. Bjerkness*, 636 F. Supp.2d 696, 719 n.13 (N.D. Ill. 2009), the defendants' motion to dismiss this claim against them is denied.

## III.  CONCLUSION

For the reasons stated, Whaley's motion to dismiss the plaintiffs' claim for correction of named inventor under 35 U.S.C. § 256 for lack of subject matter jurisdiction is **GRANTED**.  In all other respects, the motions are **DENIED**.

**SO ORDERED**.

April 6, 2010.

_____
A. JOE FISH
**Senior United States District Judge**